1819.

The Caledonian.

(PRIZE.)

## The CALEDONIAN.—DICKEY, Claimant.

A vessel and cargo, which is liable to capture as enemy's property, or for sailing under the pass or license of the enemy, or for trading with the enemy, may be seized after her arrival in a port of the United States, and condemned as prize of war. The *delictum* is not purged by the termination of the voyage.

Any citizen may seize any property forfeited to the use of the government, either by the municipal law, or as prize of war, in order to enforce the forfeiture ; and it depends upon the government whether it will act upon the seizure ; if it proceeds to enforce the forfeiture by legal process, this is a sufficient confirmation of the seizure.

APPEAL from the Circuit Court of Rhode Island.

*Feb. 3d.*

This cause was argued by Mr. *D. B. Ogden* for

the appellant and claimant,[a] and by the *Attorney General* for the United States.[b]

1819.

The Caledonian.

Mr. Justice STORY delivered the opinion of the Court. This is the case of an American ship, which sailed from Charleston, S. C., with a cargo of rice, bound to Lisbon, about the 28th of May, 1813, under the protection of a British license. In the course of the voyage the ship was captured by a British frigate, and sent into Bermuda for adjudication. Upon trial she was acquitted, and her cargo being prohibited from exportation, was afterwards sold by the agent of the claimant at Bermuda, and the proceeds were remitted for his use. The ship sailed from Bermuda for the United States, in November, 1813, and upon her arrival at Newport, in Rhode-Island, was seized by the collector of that port as forfeited to the United States. The libel contains four articles propounding the causes of forfeiture; first, for the ship's having on board, and using a British licence; secondly, for the ship's being engaged in trade with the enemy; and, thirdly and fourthly, for using a British license contrary to the act of congress of the 2d of August, 1813, ch. 56. prohibiting the use of British licenses.

It is unnecessary to consider the two last articles

*Feb.* 16th

a He cited the Nelly, Note to the Hoop, 1 *Rob.* 219. The Two Friends, 1 *Rob.* 283. The Thomas Gibbons, 8 *Cranch,* 421. to show, that the vessel could not be seized *as prize,* after her arrival in port, nor by a non-commissioned seizor.

b He cited the Ariadne, 2 *Wheat.* 143.

which are founded upon statutable prohibitions, be-
cause, it is clear, that the two preceding articles,
founded on the general law of prize, are sufficient to
justify a condemnation *jure belli*, the proof of the
facts being most clearly established.

The only questions which can arise in the case,
are whether the ship was liable to seizure for the as-
serted forfeiture, after her arrival in port; and, if so,
whether the collector had authority to make the sei-
zure. And we are clearly of opinion in favour of
the United States on both points. It is not necessary,
to enable the government to enforce condemnation in
this case, that there should be a capture on the high
seas. By the general law of war, every American
ship sailing under the pass, or license of the enemy,
or trading with the enemy, is deemed to be an ene-
my's ship, and forfeited as prize. If captured on the
high seas, by a commissioned vessel, the property
may be condemned to the captors as enemy's proper-
ty; if captured by an uncommissioned ship, the cap-
ture is still valid, and the property must be condem-
ned to the United States. But the right of the go-
vernment to the forfeiture, is not founded on the cap-
ture; it arises from its general authority to seize all
enemies property coming into our ports during war;
and also from its authority to enforce a forfeiture
against its own citizens, whenever the property comes
within its reach. If, indeed, the mere arrival in port
would purge away the forfeiture, it would afford the
utmost impunity to persons engaged in illegal traffic
during war, for in most instances, the government

would have no means of ascertaining the offence until after such arrival.

1819.

The Langdon Cheves

In respect to the other point, it is a general rule, that any person may seize any property forfeited to the use of the government, either by the municipal law, or by the law of prize, for the purpose of enforcing the forfeiture. And it depends upon the government itself, whether it will act upon the seizure. If it adopts the acts of the party, and proceeds to enforce the forfeiture by legal process, this is a sufficient recognition and confirmation of the seizure; and is of equal validity in law, with an original authority given to the party to make the seizure. The confirmation acts retroactively, and is equivalent to a command.

Decree affirmed, with costs.