Earl G. KIEFFER, M.D., Claimant,

v.

UNITED STATES of America, United States Drug Enforcement Administration and Various Unknown Agents, Respondents.

Misc. No. 82–754.

United States District Court, E.D. Michigan, S.D.

Oct. 26, 1982.

Gordon S. Gold, Evans & Luptak, Detroit, Mich., for claimant.

Lynn K. Richardson, Asst. U.S. Atty., Detroit, Mich., for respondents.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Earl G. Kieffer, M.D., moves for the return of property, primarily money, currently held by the United States Drug Enforcement Administration. He bases his motion on Fed.R.Crim.P. 41(e), 21 U.S.C. § 882, and general equitable principles.

### Facts

On September 20, 1982, Judge John C. Seiler of the 35th District Court of the State of Michigan approved a search warrant for 4490 Dean Street, Wayne, Michigan, Kieffer's home and office.

The execution of the warrant seized, among other items, three bundles of cash, approximately eleven cardboard boxes of cash, a sterilizer or autoclave full of cash, and a green metal box containing an undetermined amount of money in the form of Krugerrands, Canadian and English gold coins, and miscellaneous silver, all belonging to Kieffer. Judge Seiler approved a second search warrant on September 21, 1982. Its seizure authorization was identical to that in the first warrant. Included in the inventory of the second warrant were seven boxes, a paper bag, and an envelope, all containing a variety of financial records and all belonging to Kieffer.

The State of Michigan instituted a criminal action against Dr. Kieffer, one count of

which alleges he wrote a prescription for a controlled substance (Talwin, generically known as "Pentazocine") for non-medical purposes in violation of Mich.Comp. Laws § 333.7405. Dr. Kieffer underwent a preliminary examination and was bound over to Wayne County Circuit Court for trial on the felony charge. No challenge to the validity of the state search warrants authorizing the seizure of the money has been made.

After the seizure, the state stored the currency in safe deposit vaults at Michigan National Bank. The Michigan Department of the Treasury filed a levy against $298,-638.86 for assessed taxes. On October 14, 1982, the bank returned the money to the custody of the City of Wayne, which paid the above sum to the state treasury department for application against the state tax lien. The balance of the currency was voluntarily turned over to agents of the United States Drug Enforcement Administration on October 14, 1982 for investigation of the propriety of instituting forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(6).

On the same day, the United States Internal Revenue Service determined that $1,213,392 in personal income taxes were owing for the taxable years 1969 through 1981. An additional $75,806 for the taxable year ending December 31, 1982 was assessed on the same date since plaintiff allegedly had attempted to conceal his assets.

The notice of assessment was served on Dr. Kieffer's attorney, who had power of attorney and accepted service on October 15, 1982. Also on that day, a notice of levy was served on the City of Wayne, through its attorney, and on the Drug Enforcement Administration for a total of $1,289,198.

The government informed the Court at oral argument that the DEA had $1,314,458 of Dr. Kieffer's money in its possession. That is $25,260 over the amount of the IRS lien.

### I.

Kieffer moves for the return of the property under Fed.R.Crim.P. 41(e), 21 U.S.C. § 882, and general equitable principles. An action under § 882 seems premature because the government has not yet instituted forfeiture proceedings. Relief under § 882 requires a finding of violation of Title 21, Chapter 13, Subchapter I, of the United States Code. Kieffer alleges a violation of 21 U.S.C. § 881, relating to forfeitures, but does not explain how, in the absence of a forfeiture proceeding, § 881 may be violated.

Thus, I consider this a motion brought for the return of property under Fed.R.Crim.P. 41(e), which provides in relevant part:

> A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial ...

There are three basic problems in granting relief under Rule 41(e): (1) There is no evidence of an unlawful search and seizure; (2) Kieffer has not shown that he is entitled to lawful possession of the property; (3) in the event that the money was erroneously ordered returned to Kieffer, Rule 41(e) would prevent its use as evidence in a subsequent criminal proceeding, even though such use might otherwise be appropriate and perhaps vital to the government's case.

■ In addition, a claimant under Rule 41(e) is required to show irreparable injury if the motion involves suppression of evidence. *See G.M. Leasing Corp. v. United States,* 429 U.S. 338, 359, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977). While Kieffer has not asked for suppression, as mentioned above, Rule 41(e) requires that evidence be suppressed if the motion is granted. While Kieffer alleges that the seized money constitutes the bulk of his assets, the government asserts that Kieffer has other liquid assets which he may use to support himself, at least for the time being.

## II.

It is settled law that the United States may "adopt" another government's seizure of property. *United States v. One Ford Coupe Automobile,* 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); *The Ray of Block Island,* 11 F.2d 522 (1st Cir.), *aff'd sub nom. Dodge v. United States,* 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926). Kieffer attempts to distinguish these cases because they are old and because they predate the elimination of the "silver platter" doctrine in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). That the cases the government relies on are old is of no consequence. Cases do not decline in precedential value unless later judicial or legislative action makes it improper to rely on them.

*Elkins* simply adds a caveat to the adoptive seizure rule: The original seizure may not have been in violation of the United States Constitution. However:

> *Elkins* must be distinguished from the situation in which the search by the state officers was in violation of state law but not unconstitutional. In such a case, even if the evidence would be excluded in the state where the search occurred [citation omitted], it is admissible in the federal courts, *United States v. Miller,* 452 F.2d 731 (10th Cir.1971) . . .

Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure; Cases, Comments and Questions* 215 n. a (5th ed. 1980).

The Court has not been informed of the reason for the state's abandonment of its seizure. It may be because there is considerable doubt whether Kieffer's alleged acts violated Michigan law. As Kieffer points out, the Michigan Court of Appeals recently ruled that the authority to regulate Talwin had been improperly delegated to the State Board of Pharmacy by the Michigan legislature. *People v. Turmon,* 117 Mich.App. 345, 323 N.W.2d 698 (1982).[1] No allegation has been made that the state's seizure violated any of Kieffer's rights guaranteed by the United States Constitution. The searches of his home were conducted pursuant to properly authorized search warrants. Because there is no evidence of an improper search or seizure, *Campbell v. United States,* 592 F.2d 309 (6th Cir.1979), cited by Kieffer for the proposition that an improper seizure cannot be remedied by the imposition of a jeopardy assessment by the Internal Revenue Service, is inapposite.

The government has assured the Court that it is proceeding as quickly as possible with the evaluation of the evidence it received from the state. Account books and records kept by Kieffer were also seized and turned over to the government. It is attempting to determine how much of the money, if any, is subject to forfeiture and has assured the Court that it will return to Kieffer any money it determines is not subject to forfeiture.

For the foregoing reasons, Kieffer's Motion To Enjoin Seizure/Return of Property is denied.

---

1. While Talwin or Pentazocine may not be controlled under Michigan law, it is under federal law. There are five references to Pentazocine in the Code of Federal Regulations, the most pertinent of which appears at 21 C.F.R. § 1308.15(e), where it is classified a "Schedule IV" drug.