STATE OF OHIO, Plaintiff–Appellee,

v.

Charles E. WRIGHT, Ohio State Highway Patrol Trooper, Defendant–Appellant.

No. 91–3615.

United States Court of Appeals, Sixth Circuit.

Reargued Dec. 9, 1992.

Decided April 30, 1993.

David C. Greer (argued and briefed), Bieser, Greer & Landis, Dayton, OH, for plaintiff-appellee.

Jeffery W. Clark, Office of the Attorney General of Ohio, Deborah P. O'Neill (argued and briefed), Columbus, OH for defendant-appellant.

Sean Connelly (argued and briefed), U.S. Dept. of Justice, Washington, DC, amicus curiae U.S.

David C. Greer, Bieser, Greer & Landis, Dayton, OH, amicus curiae Kessler.

Before MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

MERRITT, Chief Judge.

This appeal originated as an action in state court for contempt of court against the defendant, a police officer. The state court ordered him to return to the court $12,000 in confiscated drug money. He did not comply because the federal drug officers with whom he had deposited the funds refused to return it to him. He removed the case to federal court under 28 U.S.C. § 1442(a)(1) on the ground that his contempt citation arose out of his duties as an "officer of the United States ... or person acting under him."[1] The initial question before us is whether the police officer may appeal the order of the District Court remanding the case to the state court. The District Court appears to have remanded under § 1447(c) of the removal statute because the Court believed itself to "lack subject matter jurisdiction."

## I.

■ Section 1447(d) of the removal statute in plain language prohibits appeals from such remand orders:

An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 [civil rights cases]

of this title shall be reviewable by appeal or otherwise.

No exception to this rule of nonreviewability is applicable to this case. The District Court concluded that the case was removed improvidently and without federal jurisdiction. The Court did not dispose of the case on nonjurisdictional grounds, as in *Regis Associates v. Rank Hotels Management, Ltd.*, 894 F.2d 193 (6th Cir.1990). The Court found no plausible federal issue or defense and thus remanded the case to the state court for lack of jurisdiction. Therefore the narrow exception to nonreviewability found in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), is inapplicable. In *Hermansdorfer*, the Supreme Court allowed review of the district court's remand order because "respondent did not purport to proceed on the basis that [the] case had been removed 'improvidently and without jurisdiction.' Neither the propriety of the removal nor the jurisdiction of the court was questioned by respondent in the slightest." *Id.* at 343–44, 96 S.Ct. at 589.

This rule of nonreviewability of remand orders, first enacted over one hundred years ago, is important to our system of federalism. Parties to state litigation should not be delayed by procedural fencing over the intricacies and perplexities of removal jurisdiction, and state courts should not be long interrupted in the conduct of their litigation by removal petitions. It makes no difference that the District Court may be wrong in its conclusions concerning jurisdiction or the plausibility of the federal defense asserted. The federalism principle overrides this concern.[2]

---

1. This section provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

2. As Justice (now Chief Justice) Rehnquist explained in his dissenting opinion in *Hermansdorfer*:

As the Court recognizes, the limitation found in § 1447(d) has remained substantially unchanged since its enactment in 1887, and this Court has consistently ruled that the provision prohibits any form of review of remand orders.

Congress' purpose in barring review of all remand orders has always been very clear—to prevent the additional delay which a removing party may achieve by seeking appellate reconsideration of an order of remand. The removal jurisdiction extended by Congress works a significant interference in the conduct of litigation commenced in state court. While Congress felt that making available a federal forum in appropriate instances justifies some such interruption and delay, it obviously thought it equally important that when removal to a fed-

## II.

The view of our dissenting colleagues is as follows: The action of the District Court is appealable because, by rejecting the proffered "federal defense" of the defendant state police officer, the court below heard the case "on the merits," decided a "collateral issue" other than jurisdiction and made a "substantive decision." The dissent fails to make a distinction between an adjudication of the question of removal jurisdiction which depends on an examination of the federal defense and a final adjudication of the validity of the federal defense on the merits. It confuses the two. An examination of the two opinions of the District Court shows that the dissent's characterization of the lower court's decision as a decision on the merits is in error. On January 4, 1991, the District Court entered an order stating:

> In the present case, the Defendant has not identified a federal defense or immunity which would support the present removal. Therefore, the Court hereby directs the Defendant to file, within thirty days of the filing of this entry, a memorandum demonstrating upon what federal defense he relies. The Court will thereafter resolve ... issues regarding its jurisdiction.

(App. 214.)

The District Court held a hearing on March 30, 1991, after the state police officer had filed the requested memorandum claiming a colorable federal defense. On May 31, 1991, the Court entered a second and final order as promised, resolving the question of jurisdiction. In its second order the Court states that it must decide "the question of whether this case was properly removed." (App. 227.) At no point in its order does the Court suggest that it is ruling on the merits of the case or is making a "substantive decision" binding on the officer. It concludes its second order:

> Based upon the foregoing, the Court hereby dismisses Defendant's petition of removal (Doc. #1). This case is hereby

remanded to the Miami County Municipal Court.

(App. 233.) Immediately before this conclusion the Court gives its reasoning in the following two paragraphs:

> Simply stated, there is simply no evidence before the Court that the Defendant is an "officer, agent, or other person authorized by law to make seizures ... for violation of the customs laws." Moreover, Defendant presents neither argument nor evidence that the seizure of $12,000 in United States currency from an automobile traveling in Miami County, Ohio, was merchandise or baggage seized for violation of the customs laws. Therefore, this Court concludes that Defendant has failed to demonstrate that he has a federal defense to the contempt proceedings.

> To the extent that Defendant is arguing that 21 U.S.C. § 881(d), by incorporating provisions relating to the seizure of property for the violation of customs laws into the forfeiture provision for property seized in violation of drug laws, provides a federal defense, this Court disagrees. Section 881(d) imposes duties upon "officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General." Defendant has provided no evidence that he is within this class of persons. Simply stated, this Court is unwilling to interpret § 881(d) to federalize state and local law enforcement officers.

(App. 233.)

The Court rests its decision firmly on the ground that there is no "evidence" or showing giving rise to a federal defense, and hence no removal jurisdiction. Whether one agrees or disagrees with this reasoning, it is clear that the Court held that the state police officer has failed in the removed case "to demonstrate that he has a federal defense to the contempt proceedings." Thus the District Court held that there is no colorable claim of a valid federal defense, and it remanded the case to the state court for lack of removal jurisdiction. It did not adjudicate

---

eral court is not warranted the case should be returned to the state court as expeditiously as possible. If this balanced concern is disregarded, federal removal provisions may be-

come a device affording litigants a means of substantially delaying justice.

423 U.S. at 354–55, 96 S.Ct. at 594–95.

the merits. The dissent's reliance on *Hermansdorfer* is thus misplaced. In *Hermansdorfer* the district court had "remanded a case on grounds not specified in the statute and not touching the propriety of the removal." 423 U.S. at 352, 96 S.Ct. at 593.

A federal defense is a necessary element in every § 1442(a)(1) "federal officer" removal under *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), because officers must claim "authority" for their conduct under an "Act of Congress." The rule suggested by our dissenting colleagues seems to mean that all federal officer removals under § 1442(a)(1) are appealable despite the plain language of § 1447(d) because district courts in all such cases must necessarily examine the claimed federal defense to determine their jurisdiction. The dissenting view would seem to render meaningless in all § 1442(a)(1) cases the rule of nonreviewability of orders of remand in removal cases. If the district court must examine and discuss the federal defense in all such cases and if such an examination *ipso facto* makes the remand order appealable, nothing is left of the statutory language in § 1447(d): "An order remanding a case to the state court from which it was removed is not reviewable on appeal or otherwise." The dissenting position turns this language on its head. According to their view the statute now reads, "All orders remanding § 1442(a)(1) cases to the state court from which they were removed are reviewable on appeal." Such an interpretation is not only contrary to the plain language of § 1447(d), it is contrary to the congressional purpose—"to prevent the additional delay which a removing party may achieve by seeking appellate reconsideration of an order of remand" and to prevent federal removal from becoming "a device affording litigants a means of substantially delaying justice."[3] The words of a statute can be read to mean many things, but they should not be read to mean the exact opposite of what the statute clearly says and what the congressional policy clearly intended.

This case well illustrates the reasoning underlying the "no appeal" rule in removal cases. The court below entered its final order on May 28, 1991, almost two years ago, and the case has been pending on appeal since that time, effectively delaying a contempt proceeding in the state courts of Ohio. The removal petition was filed on February 26, 1988. The result of the removal has been to delay the administration of justice in the case in the state courts for more than five years.

Our decision here is reinforced by *Baldridge v. Kentucky-Ohio Transportation, Inc.*, 983 F.2d 1341 (6th Cir.1993). There, after a comprehensive survey of removal cases on appealability, we held that an appellate court may not review a district court remand order in a case in which the defendant removed a state case claiming a complete federal preemption defense. Obviously, in such federal preemption removal cases, as in federal officer removal cases like this one, the district court must necessarily examine the nature and plausibility of the federal defense. Judge Guy, writing for the Court, pointed out that "the so-called 'collateral issue' was not collateral at all" because "the preemption inquiry here ... necessarily 'related to the question of [removal] jurisdiction.' " *Id.* at 1348. The opinion concluded that an appellate court should not "invoke" a doctrine—whether labeled "decision on the merits," "collateral issue" or "substantive decision"—which erects appellate jurisdiction on the ground that the district court had to examine and discuss the federal defense before remanding the case for lack of removal jurisdiction. The court stated that to conclude otherwise would undermine the basic congressional policy of "preventing delay in the trial of remanded cases by protracted litigation of jurisdictional issues." *Id.* at 1350. Likewise here the question of removal jurisdiction was the heart of the decision in the district court, and the district court had to examine the plausibility of the federal defense in making its ruling to remand for lack of removal jurisdiction.

We follow the court's opinion in *Baldridge* also in pointing out that doctrines of *res judicata* and "law of the case" do not prevent the defendant from raising the mer-

---

3. See footnote 2 *supra*.

its of his federal defense in the state court. The district court's decision here, as in *Baldridge*, was not a decision "on the merits." Whether the district court was right in assessing the plausibility of the federal defense is not before us, and our opinion should not be read as having ruled on that issue. As we said earlier, our ruling is based on the overriding federalism interest expressed by Congress when it enacted § 1447(d).

■ Neither should we set aside this clear congressional policy on reviewability because we believe that the state officer is being subjected to an unfair state contempt proceeding, as our dissenting colleagues maintain. The congressional policy does not authorize such result-oriented decisions on reviewability under § 1447(d). Principles of federalism presume that the appellate courts of Ohio are perfectly capable and willing to correct any errors which may occur in the trial of the state court contempt proceeding.

Accordingly, this court lacks jurisdiction of this case and the appeal is therefore dismissed pursuant to 28 U.S.C. § 1447(d).

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

I concur in the majority opinion authored by Judge Merritt and in Judge Jones' separate concurring opinion. In addition, I would like to add that the reason for this court's quandary in this case, the reason for the multitude of approaches that we have taken, is the Supreme Court's refusal in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), to follow the clear dictates of 28 U.S.C. § 1447(d).

Congress could not have written a clearer statute. 28 U.S.C. § 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 [civil rights cases] of this title shall be reviewable by appeal or otherwise.

Any fair and honest reading of this statute mandates that no appellate court will review a district court's decision to remand a case unless the case was removed pursuant to section 1443. Neither the *Hermansdorfer* case nor this case was removed pursuant to section 1443, so there should be no appellate review of the remand decision in either case. The *Hermansdorfer* court, despite the clear dictates of Congress, decided to review the district court's remand order.

The court may have had legitimate policy reasons for refusing to follow section 1447. The court's resort to use of prior statutes, however, to interpret away the plain meaning of section 1447, *Hermansdorfer*, 423 U.S. at 347–48, 96 S.Ct. at 591, is a *tour de force* of judicial overreaching. Congress made its choice clear concerning the procedure for reviewing remand orders in section 1447(d), and the court's disagreement with the result mandated by Congress is not a sufficient basis upon which to find appellate jurisdiction, which must be found in the law. If section 1447 is unwise, then Congress possesses the prerogative to change it, not any federal court.

Twisting a clear jurisdictional statute to mean something which it does not mean creates havoc for courts. This court's effort to divine whether section 1447 means what it says under the facts of this case, required due to *Hermansdorfer* and its progeny, highlights the error in refusing to comply with section 1447's clear language. We already have numerous opinions in this case, arguing, for example, over the distinction between a "colorable" defense versus a "valid" defense, to determine whether *Hermansdorfer* applies. Arguments such as these show that the fundamental problem with *Hermansdorfer* is that the Supreme Court has created a hole, the parameters of which are completely undefined, in section 1447. In our effort to explicate the hole created by *Hermansdorfer*, we will not achieve a satisfactory, cogent opinion that will be truly beneficial to future cases. The root of the problem lies nonetheless with the Supreme Court's refusal to follow section 1447(d).

NATHANIEL R. JONES, Circuit Judge, concurring.

I concur with the majority opinion which holds that we have no jurisdiction over this

appeal in accordance with 28 U.S.C. § 1447(d) (1988). I write separately, however, to give fuller exposition to this holding.

If a district court remands a case based on the grounds listed in 28 U.S.C. § 1447(c) (1988),[1] this court cannot review the remand order. 28 U.S.C. § 1447(d); *Thermtron Products v. Hermansdorfer*, 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976). Importantly, this court is without jurisdiction to review a remand order grounded in Section 1447(c) *even if the district court bases its determination that it lacks jurisdiction on erroneous legal principles or analysis. Thermtron*, 423 U.S. at 343, 96 S.Ct. at 589 (Section 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ. This · has been the established rule under § 1447(d) and its predecessors stretching back to 1887."); *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 723, 97 S.Ct. 1439, 1439, 52 L.Ed.2d 1 (1977) (per curiam) (though the Fifth Circuit had vacated a district court's remand order because the district court "had employed erroneous principles in concluding that it was without jurisdiction," the Supreme Court reversed, holding that the district court's decision that it lacked jurisdiction plainly falls under Section 1447(c) and thus is not reviewable—erroneous or not); *see also Volvo of America Corp. v. Schwarzer*, 429 U.S. 1331, 1331–33, 97 S.Ct. 284, 284–85, 50 L.Ed.2d 273 (1976) (opinion in chambers) (review of district court's order remanding a case pursuant to Section 1447(c) is barred by Section 1447(d), even though the district court "may have been wrong in its analysis"; taking the position that erroneous jurisdictional findings should be reviewable "would mean that any allegedly erroneous application of § 1447(c) would be reviewable by writ of mandamus, leaving the § 1447(d) bar extant only in the case of allegedly proper applications of

§ 1447(c), a reading too Pickwickian to be accepted, and contrary to the clear language of *Thermtron* ").

The panel originally entertaining this appeal seemingly found jurisdiction to exist under an exception to the general jurisdictional rule of Section 1447(d) for remand orders that are rooted in substantive determinations of law, citing *Regis Assocs. v. Rank Hotels (Management) Ltd.*, 894 F.2d 193, 194 (6th Cir.1990). In *Regis*, we reviewed a remand order that was based on an interpretation of a forum-selection clause. We held that a direct appeal could obtain, writing: "Following *Thermtron*, a body of case law has developed holding that a remand order is reviewable on appeal when it is based on a substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction." *Id.* In line with *Regis*, at least three other circuits have held that a district court's resolution of a forum-selection clause dispute leading to a remand is reviewable on direct appeal. *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1210–11 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991); *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 658–59 (2d Cir.1988); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276–77 (9th Cir.1984); *see also Clorox Co. v. United States Dist. Court*, 779 F.2d 517, 520 (9th Cir.1985). The rationale for review on direct appeal is that resolution of a forum-selection clause dispute is a matter of contract law, separate and distinct from the issue of whether a federal district court has subject matter jurisdiction. *See Pelleport*, 741 F.2d at 276 ("the district court did not merely remand this case to the state court; it reached a substantive decision on the merits *apart from any jurisdictional decision* ") (emphasis added).

As the majority opinion in the instant case notes, the policy underlying the jurisdictional

---

1. Section 1447(c) reads:

 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.* An order remanding the

 case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

 (Emphasis added.)

bar of Section 1447(d) is to prevent protracted disputes over federal jurisdiction which would serve to delay resolution on the merits of an action commenced in state court. *See also Thermtron,* 423 U.S. at 351, 96 S.Ct. at 593. "[W]here a district court *bypasses the jurisdictional arguments* and reaches the merits of a contract dispute, the policy is inapplicable." *Pelleport,* 741 F.2d at 277 (emphasis added); *see also Karl Koch Erecting Co.,* 838 F.2d at 658 ("This policy is not applicable when a district court *with subject-matter jurisdiction* remands a case on the basis of its interpretation of a forum-selection clause.") (emphasis added). In sum, where the specific issue is *not* whether a case was improvidently removed to a federal court because the federal court lacks subject matter jurisdiction, this court may entertain a direct appeal of the district court's resolution of that issue.

A distinctly different issue is presented, however, where the district court's sole consideration leading to remand is whether the case was improvidently removed in the first instance due to lack of subject matter jurisdiction. Such is the case here.

State Trooper Charles E. Wright filed a Petition to Remove a Contempt Action pursuant to 28 U.S.C. § 1442(a)(1). The district court determined that Trooper Wright failed to allege or aver a federal defense which, according to the Supreme Court in *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), is necessary for removal under 28 U.S.C. § 1442(a)(1). *Mesa,* 489 U.S. at 139, 109 S.Ct. at 970 ("Federal officer removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense."); *see* Decision and Entry Dismissing Petition for Removal; Cause Remanded; Termination Entry at 7 [hereinafter Decision] ("Herein, the petition for removal . . . does not allege a federal defense to the pending contempt upon which Defendant relies."). The district court concluded that it did not have subject matter jurisdiction, and thus remanded the case. *See* Entry Denying Defendant's Motion for a Stay at 1 ("On May 28, 1991, this Court entered its Decision concluding that it was without subject matter jurisdiction over Defendant's removal petition.").[2] Section 1447(c) squarely contemplates this ground for remand. *See Thermtron,* 423 U.S. at 346, 96 S.Ct. at 590 (remand orders that are grounded on the fact that removal was "improvident and without jurisdiction" are immune from review under Section 1447(d)). Thus, *even if* the district court erred in its legal analysis, the remand order is immune from review by any means. *See Gravitt,* 430 U.S. at 723, 97 S.Ct. at 1439; *Schwarzer,* 429 U.S. at 1331–33, 97 S.Ct. at 284–85; *Foster,* 933 F.2d at 1211 ("the district court is therefore given the last word on whether it has jurisdiction to hear the case").

Trooper Wright seeks to avoid this result by invoking the logic (or rather, incanting the language) of *Whitman v. Raley's Inc.,* 886 F.2d 1177 (9th Cir.1989). In that case, the Ninth Circuit explained that, generally speaking, the plaintiff is master of his/her complaint. Thus, generally speaking, under the "well-pleaded complaint rule," a federal question must be present on the face of a complaint filed in state court for the defendant to remove the action to a federal court. Mere assertion of a federal defense will not serve as a basis for removal, even if the federal defense is obvious and expected in response to the claim(s) brought. There is a notable exception to this rule, however. Where Congress intends completely to preempt state law in a certain area, causes of action arising thereunder may be removed though a federal question is not present on the face of the complaint. If a district court makes the threshold determination that preemption is incomplete, it does not have subject matter jurisdiction, and must thus remand the case to the state court. Such a remand is not reviewable, period. If a district court, however, makes the threshold determination that preemption is complete, it does have subject matter jurisdiction and may thus consider collateral issues (such as the merits of "preemption defenses"—an is-

---

**2.** Though the district court did not cite Section 1447 in its remand order, "[s]everal decisions show that the appeals courts will liberally construe the district court's reasons for a remand in order to find that the court invoked § 1447(c) and thereby avoid reviewing the challenged order." *In re Romulus Community Schools,* 729 F.2d 431, 435 (6th Cir.1984) (citing cases).

sue raised in *Whitman* ). *See generally id.* at 1180–81.

Trooper Wright seems to apply *Whitman* to the case at bar in the following way. The underlying contempt action in this case arose from a situation where Trooper Wright seized suspected contraband in the course of a routine traffic stop. He turned over the suspected contraband to federal officers per an agreement established between the Ohio State Highway Patrol ("OSHP") and the Drug Enforcement Administration ("DEA"). A state court sought return of the suspected contraband from Trooper Wright, and he failed to comply with this request. With these basic facts as a framework, Trooper Wright observes that the United States government may adopt a seizure made by a state official. *See United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279 (1926); *Kieffer v. United States*, 550 F.Supp. 101, 103 (E.D.Mich.1982). When the adoption takes place, Trooper Wright contends, the state official who did the seizing is retroactively cloaked with federal authority effective as of the moment of the seizure. *Cf. The Caledonian*, 17 U.S. (4 Wheat.) 100, 103, 4 L.Ed. 523, 525 (1819) ("If [the government] adopts the acts of the party [that seizes property], and proceeds to enforce the forfeiture by legal process, this is sufficient recognition and confirmation of the seizure, and is of equal validity in law, with an original authority given to the party to make the seizure. The confirmation acts retroactively, and is equivalent to a com-

mand."). Furthermore, Trooper Wright seems to contend that the federal statutory duty to report and turn over suspected contraband to federal officials, *see* 19 U.S.C. § 1602 (1988); 21 U.S.C. § 881(d) (1988),[3] was extended to him as he carried out the procedures the OSHP had established in conjunction with DEA. *See* Trooper Wright's Initial Br. at 10–12, 14. "As a result, it is clear that Congress has manifested an intent to immunize local governments through the adoptive seizure federal forfeiture laws, therefore, establishing a complete preemption of this area of federal law vested in the federal courts." Trooper Wright's Supplemental Br. at 12; *see also* Appellant's Memorandum in Opposition to Appellee's Motion to Dismiss at 4 ("Appellant contends that Congress has clearly manifested its intent to assume federal court jurisdiction in adoptive seizure matters when it enacted the provisions of federal law under 21 U.S.C. Section 881 and 19 U.S.C. Section 1602."). Trooper Wright seems to be arguing that the district court implicitly recognized the complete federal preemption of matters having to do with adoptive seizures (when, for example, it held that Trooper Wright was acting pursuant to federal authority when he failed to deposit the seized suspected contraband with the state court), but "merely disagreed with [Appellant's] federal defenses." Appellant's Memorandum in Opposition to Appellee's Motion to Dismiss at 3. Whether federal defenses or immunities were alleged, according to Trooper Wright, is to be understood as a "collateral issue," a ruling on which is

---

**3.** 19 U.S.C. § 1602 imposes a duty to report and to turn over property seized for violation of the customs laws:

It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage subject to seizure for violation of the customs laws to report every such seizure immediately to the appropriate customs officer ... and to turn over and deliver to such customs officer any ... merchandise or baggage seized by him....

21 U.S.C. § 881(d) incorporates this provision into the forfeiture provisions relating to property seized for violation of drug laws:

**§ 881. Forfeitures**

**(d) Other laws and proceedings applicable**

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs

laws; the disposition of such property or proceeds from the sale thereof; the remission or migration of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer of any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to the seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effectuated by any customs officer.

reviewable on direct appeal in accordance with *Whitman.*[4]

Trooper Wright's argument is misguided. The district court's determination that Trooper Wright alleged no federal defenses or immunities was *not* a "collateral issue." In accordance with *Mesa,* it went to the very heart of whether the district court had, in the first instance, subject matter jurisdiction over the case.[5]

In addition, the district court never made any determination that federal law had completely preempted the field of adoptive seizures. If it had made such a determination, it never would have written, "this case was remanded to the Miami County Municipal Court because this Court was without subject matter jurisdiction over the controversy." Entry Denying Defendant's Motion for a Stay at 2 n. 2.

To complete this discussion, it should be noted that Trooper Wright also argues that the Sixth Circuit case of *In re Romulus Community Schools,* 729 F.2d 431 (6th Cir. 1984), supports his jurisdictional contentions. *See* Trooper Wright's Initial Br. at 10. Trooper Wright's argument is misplaced. In *Romulus,* the plaintiff had filed a four-count complaint in state court, three counts based on state law and one count based on federal law. The defendants removed the case to federal court, and the plaintiffs thereupon filed a motion to amend their complaint by striking the federal claim which had formed the only basis for removal. It was clear that the case had been properly removed and that the district court had jurisdiction to hear it. It was also clear that once the case had been removed, the district court had pendent jur-

---

**4.** The United States, which has submitted amicus briefs, makes essentially the same argument. It maintains that the district court's rejection of Trooper Wright's claims to federal defenses and immunities constitutes a "substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction." *See* Opposition of United States to Motion to Dismiss at 3 (quoting *Regis,* 894 F.2d at 194). As will be discussed forthwith, this contention is meritless. The decision of the district court concerning Trooper Wright's claims to federal defenses and immunities goes to the very heart of federal jurisdiction; it is not "opposed to" it.

**5.** Judge Kennedy, in her dissent, contends that the district court's determination that Trooper Wright alleged or averred no federal defense was indeed a "substantive decision[] on [a] collateral issue[] apart from purely jurisdictional concerns." In her view, "[the district court] did not say, Wright, you have no colorable defense because there is no basis to claim any such defense. Rather, it went on to examine the defense and decided that the drug forfeiture laws do not incorporate the customs laws."

I respectfully disagree with this rendition of what the district court did. In my view, the district court did say, Trooper Wright, you have no colorable defense because there is no basis to claim any such defense. The district court stated, "Herein, the petition for removal ... does not allege a federal defense to the pending contempt upon which Defendant relies." Decision at 7. It then went on to state why, in its opinion, there is no basis to claim any such defense. First, it concluded that Trooper Wright had not alleged a federal defense under Section 1602 because "there is simply no evidence before the Court that [Trooper Wright] is an 'officer, agent,

or other person authorized by law to make seizures ... for violation of the customs laws[,]' " and Trooper Wright "presents neither argument nor evidence that the seizure of $12,000.00 in United States currency from an automobile traveling in Miami County, Ohio was merchandise or baggage seized for violation of the customs laws." Decision at 8. In a footnote, the district court concluded that Trooper Wright had not averred a federal defense by asserting that the state court was being hostile to federal interests because "there is absolutely no evidence before this Court regarding [the state court's] asserted hostility." *Id.* at 7 n. 9. In another footnote, the district court determined that Trooper Wright had not asserted a federal defense under Section 881 because Trooper Wright "has provided no evidence that he is within this class of persons," Decision at 8, viz., an "officer[], agent[], or other person[] as may be authorized or designated ... by the Attorney General." 21 U.S.C. § 881(d). Decision at 8 n. 10. In sum, the district court found no evidence of and no basis for claiming a colorable federal defense. That the district court reached this conclusion by reference to federal statutes does not necessarily make the conclusion a "substantive decision[] on [a] collateral issue[] apart from purely jurisdictional concerns." *Mesa* does not require the district court to conclude whether a federal defense has been averred *a priori*. *Mesa* requires "an averment of a federal defense" for subject matter jurisdiction to inhere and thus removal to obtain under Section 1442(a). 489 U.S. at 139, 109 S.Ct. at 969. The district court examined the record before it and concluded that such a defense had not been averred. Whether or not we agree with this determination based on our own interpretation of the referents according to which the district court made its conclusion is of no moment.

isdiction over the state claims even if the federal law claim disappeared. The district court's remand decision was not based on any finding that removal was improperly granted due to lack of subject matter jurisdiction. The remand decision rested entirely on the district court's "perceived discretion under the doctrine of pendent jurisdiction to remand the case." *Id.* at 435. This being the case, this court determined that it could review the remand order upon a petition for writ of mandamus.[6] *Id.; see also Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 348–57, 108 S.Ct. 614, 617–22, 98 L.Ed.2d 720 (1988); *J.O. v. Alton Community Unit Sch. Dist.,* 909 F.2d 267, 269–71 (7th Cir.1990).

The remand in the case at bar was not discretionary; it was jurisdictional. Thus, *Romulus* is simply inapplicable.

In sum, the district court made the threshold determination that it was without subject matter jurisdiction to grant Trooper Wright's petition for removal of the state contempt action. Once this decision is made, even if it is clearly erroneous, it may not be reviewed, according to 28 U.S.C. § 1447(d) and *Thermtron.* Thus, I agree that this appeal is properly dismissed.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment announced by Chief Judge Merritt and in most of the reasoning employed in his opinion. I write separately, however, to note my belief that it makes no difference whether the district court adjudicated the merits of the defendant officer's federal defense (the view taken by the dissent) or held that the defense was not colorable (the view taken by Judges Merritt and Jones).[1]

What controls our power to review the district court's remand order is 28 U.S.C. § 1447(d). That statute says in the plainest of terms that "[a]n order remanding a case to the State court from which it was removed is not reviewable. . . ." The order at issue here did remand the case to the state court from

---

6. Along these lines, it is noted that *even if* this court decided that it may review the remand order in this case, the proper procedure to obtain such review is to file a petition for writ of mandamus, not a direct appeal. *See Thermtron,* 423 U.S. at 352–53, 96 S.Ct. at 593–94 (if a remand order is not subject to the complete bar of Section 1447(d), "this Court has declared that because an order remanding a removed action does not represent a final judgment reviewable by appeal, '[t]he remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done'") (citation omitted); *J.O.,* 909 F.2d at 271 ("A . . . problem arises with respect to the plaintiffs' direct appeal from the remand order. The Supreme Court's holding in *Thermtron Products,* indicates that our only power to review a remand order is through a petition for a writ of mandamus."). Though in the past we have treated a direct appeal as a petition for writ of mandamus, *see J.O.* at 271 ("We will . . . treat the appeal from the remand order as a petition for a writ of mandamus."), it is further noted that the standard of review for mandamus actions presents a more difficult obstacle for a petitioner than the standard of review for direct appeals presents for an appellant. *See In re Bendectin Prods. Liability Litig.,* 749 F.2d 300, 303–04 (6th Cir.1984).

1. This presupposes that there is a distinction between a defense that is held to be legally insufficient and a defense that does not confer federal jurisdiction because it is not even plausible enough to be considered "colorable." Like my colleagues on both sides, I believe that it is appropriate to draw such a distinction. See *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), where the Supreme Court expressed itself thus in discussing *The Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 18 L.Ed. 851 (1868):

> "For purposes of removal, we only required the mayor and aldermen to allege a colorable defense under federal law; '[t]he validity of the defence authorized to be made is a distinct subject. It involves wholly different inquiries. . . . It has no connection whatever with the question of jurisdiction.'" *Mesa,* 489 U.S. at 129, 109 S.Ct. at 964, quoting *Cooper,* 73 U.S. (6 Wall.) at 254.

One could argue, to be sure, that the distinction between a colorable defense and a valid defense disappears where there is no dispute as to the facts. The district court may well have assumed that no meaningful distinction existed in the case at bar, which would explain why the court ordered a remand on the ground that "Defendant has failed to demonstrate that he has a federal defense. . . ." Such an assumption would be wrong, in my view. Where the legal sufficiency of a proffered federal defense is a reasonably close question, as it is here, it seems to me that a district court can and should retain jurisdiction and adjudicate the merits of the defense in a way that would permit an appeal to be taken to the federal court of appeals. But the fact that the remand of the present case was probably improper does not answer the question whether Congress has given us power to review it.

which it was removed, and if words have meaning the order simply "is not reviewable."

The district judge issued the remand order because it appeared to him, rightly or wrongly, that removal jurisdiction did not exist. The judge obviously believed that a remand was required by 28 U.S.C. § 1447(c), which says that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), does not suggest that § 1447(d) can be ignored where the remand order results from a misapplication of § 1447(c); as Judge Jones' concurrence points out, *Thermtron* says just the opposite. See 423 U.S. at 343. If we would not have been justified in ignoring § 1447(d) because the district court erroneously held subject matter jurisdiction to be lacking because the defendant officer had no "colorable" federal defense, I do not see why we would be entitled to shut our eyes to the statute if the district court erroneously thought it was without jurisdiction because the proffered defense, even if colorable, was invalid as a matter of law.

KENNEDY, Circuit Judge, dissenting.

I respectfully dissent from the majority's conclusion that we have no jurisdiction to review by mandamus the District Court's order of remand in this case. Although the statute 28 U.S.C. § 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," the majority of the Supreme Court in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), placed a limitation on that outright prohibition. Where the remand is on grounds permitted by the statute there is no review. But where a district court has not only "erred in applying the requisite provision for remand but has remanded a case on grounds not specified in the statute and *not touching the propriety of the removal,*" the appellate court has the power to correct the error. *Id.* at 352, 96 S.Ct. at 593 (emphasis added). In creating this limitation the Court looked to the predecessor sections

of 1447(d), 28 U.S.C. § 71 and 28 U.S.C. § 80. Section 71 provided that:

Whenever any cause shall be removed from any State court into any district court of the United States, and the district court shall decide that the cause was *improperly removed,* and order the same to be remanded to the State court from whence it came, such remand shall be immediately carried into execution, and no appeal from the decision of the district court so remanding such cause shall be allowed.

28 U.S.C. § 71 (emphasis added). While section 80 provided:

If in any suit commenced in a district court, or removed from a State court to a district court of the United States, it shall appear to the satisfaction of the said district court, at any time after such suit has been brought or removed thereto, *that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court,* or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just.

28 U.S.C. § 80 (emphasis added); *see Hermansdorfer,* 423 U.S. at 347–48 n. 12, 96 S.Ct. at 591 n. 12. The Court concluded that until 1948, when section 1447(c) and (d) came into being,

district courts were authorized to remand cases over which they had no jurisdiction or which had been otherwise "improperly" removed, and district court orders "so remanding" were not appealable. It was held that a case remanded for want of jurisdiction under § 80, which itself contained no prohibition of appellate review, was an "improperly" removed case under § 71 and hence subject to the reviewability bar of that section. *Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374 [57 S.Ct. 273, 81 L.Ed. 289] (1937). But under

the plain language of § 71, a case was "so remanded" and within the reviewability prohibition only if it had been *improperly* removed.

*Id.* at 348, 96 S.Ct. at 591–92 (emphasis in original). After reviewing the doctrine prior to the enactment of section 1447(c) and (d), the Court held that the current statute intended to restate the prior law with respect to remand orders and their reviewability. The *Hermansdorfer* Court thus concluded "[t]here is no indication whatsoever that Congress meant the new statute to prohibit review allowed under prior law." *Id.* at 350, 96 S.Ct. at 592–93.

In the present case, the District Court did not remand the instant case because it had been "improperly removed," or that it did "not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court." Rather, it held that defendant was acting under the direction of agents of the Drug Enforcement Administration when he did not deposit the $12,000 in the municipal court. The District Court further held that the state court judge cited defendant for contempt not for the initial decision to turn the money over to the DEA but for allegedly disobeying the judge's order to deposit the money with the state court. Nor did the District Court remand because the defendant did not have a "colorable" defense, a requirement explained in *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Rather, the District Court heard and decided the federal defense on its merits. As the Court stated in *Mesa,*

the removal statute "is broad enough to cover all cases where federal officers can raise a *colorable defense* arising out of their duty to enforce federal law.... In fact, one of the most important reasons for removal *is to have the validity of the de-*

*fense of official immunity tried* in a federal court." (Emphasis added)

*Id.* at 133, 109 S.Ct. at 966 (quoting *Willingham v. Morgan,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969)) (emphasis added). The reason for federal officer removal is more expansively dealt with in the *Willingham* opinion, where the Court stated:

The federal officer removal statute is not "narrow" or "limited." *Colorado v. Symes,* 286 U.S. 510, 517 [52 S.Ct. 635, 637, 76 L.Ed. 1253] (1932). At the very least, it is broad enough to cover all cases where federal officers *can raise a colorable defense* arising out of their duty to enforce federal law. One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts. The position of the court below would have the anomalous result of allowing removal only when the officers had a clearly sustainable defense. The suit would be removed only to be dismissed. Congress certainly meant more than this when it chose the words "under color of ... office." In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum.

*Willingham,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1816 (1969) (emphasis added).

Here, the District Court remanded not because the case was improperly removed. Rather, it held that the customs' seizure laws do not apply to drug seizures. Thus, the District Court's remand order was more than a purely jurisdictional decision.[1]

---

1. Section 881 states:

    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

    (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable

    to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter....

    ....

    (d) The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property

Judge Jones' separate concurrence fairly covers the authorities subsequent to *Hermansdorfer* and, I believe, fairly states the issue: did the District Court make a substantive decision on the merits? My disagreement with Judge Jones is on what the District Court did. It did not say, Wright, you have no colorable defense since you were not acting as a federal officer. Rather, it said you were acting as a federal officer. It did not say, Wright, you have no colorable defense because there is no basis to claim any such defense. Rather, it went on to examine the defense and decided that the drug forfeiture laws do not incorporate the customs laws.

The consequences of the District Court's collateral holding, that there is no incorporation, may well deprive Wright of this federal defense. It is the law of the case and may well be applied against Wright in the state court contempt proceeding, assuming Ohio would recognize a defense of federal official immunity. The right not to be subjected to a state contempt proceeding for lawfully implementing federal drug enforcement directives while acting as a federal officer is an important one. I believe that under *Hermansdorfer*, an order making such substantive decisions on collateral issues apart from purely jurisdictional concerns, is reviewable.

Turning then to the merits of Wright's defense, the District Court was correct in holding that Wright was acting under federal officials when he allegedly disobeyed Judge Kessler's order to deposit the $12,000 which had been turned over to the DEA. The DEA had adopted the seizure. There can be no question but that the United States can adopt a seizure made by the governmental entities. *United States v. One Ford Coupe Automobile*, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926). The federal defense that Trooper Wright seeks to assert is the Su-

premacy Clause of the Constitution which "shield[s] a federal agent from state prosecution, *provided* his acts are both authorized by the laws of the United States and necessary and proper to the performance of his duties." *Kentucky v. Long*, 837 F.2d 727, 742–49 (6th Cir.1988) (emphasis in original) (extended discussion of the law in this area). Here, once the DEA adopted the seizure, Wright was required by the laws of the United States to turn the forfeited property over to the DEA. Thus, he was both authorized to do so and it was part of the performance of his duties. The District Court found that because the *seizure* was of drug proceeds and not of merchandise or baggage seized in violation of the customs laws, Wright was, even if acting as a federal agent, not authorized to seize the drug proceeds. The judge rejected Wright's argument that 18 U.S.C. § 881(d), which incorporates the law relating to the seizure of property in violation of the customs laws into the drug seizure statute, requires he be treated as acting as a person authorized by federal law to make seizures in turning over the seized property to DEA officers. It is unclear whether the judge held (1) that the customs' seizure provisions do not apply to drug proceeds seizures or (2) that he concluded (as indicated in a footnote to his opinion) that only persons authorized by the Attorney General could make such seizures and Wright was not so authorized. If the basis of the District Court's holding was the former, it was in error, and in view of the adopted seizure statute and the common law on adoptive seizures, Wright had at least a colorable defense. The Supreme Court's recent discussion of seizure law and the incorporation of the customs' seizure laws into drug seizure laws through the 1978 amendment to Comprehensive Drug Abuse Prevention and Control Act of 1970, 84 Stat. 1236 (21 U.S.C. § 881(d)), removes any doubt

or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of

property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

21 U.S.C. § 881(a)(6) and (d).

that the customs laws, including the common law relating to customs' seizures, are applicable to the seizure of drugs and drug proceeds. *See United States v. 92 Buena Vista Ave., Rumson,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). So far as we know, there is no innocent owner in this case and the forfeiture has proceeded administratively.

If the basis of the District Court's holding was that Wright had not been authorized by the Attorney General to make drug seizures, that too was likely in error. The drug seizure statute, 21 U.S.C. § 881(d), provides that drug seizures "shall be performed ... by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General."

Although the Supreme Court has not spoken about the effect of the federal government's adoption of a state officer's seizure upon that officer's status, it has spoken with respect to private person's status after a private seizure. In *The Caledonian,* 17 U.S. (4 Wheat.) 100, 103, 4 L.Ed. 523, 525 (1819), the Court stated:

> [I]t is a general rule that any person may seize any property forfeited to the use of the government, either by the municipal law or by the law of prize, for the purpose of enforcing the forfeiture. And it depends upon the government itself, whether it will act upon the seizure. If it adopts the acts of the party, and proceeds to enforce the forfeiture by legal process, this is a sufficient recognition and confirmation of the seizure, *and is of equal validity in law with an original authority given to the party to make the seizure.* The confirmation acts retroactively, and is equivalent to a command.[2]

(Emphasis added).

21 U.S.C. § 881(d) provides that the Attorney General may designate any state or local law enforcement officer to make seizures of property under the Drug Abuse Prevention and Control statute. A law enforcement officer so authorized should be shielded by the supremacy clause from state contempt proceedings.[3] A district court should not be able to deprive the law enforcement officer of that shield in a way insulated from review. Congress cannot have intended these statutes to operate otherwise. Wright argues that in adopting a seizure the Attorney General retroactively authorizes the local law enforcement officer to act under the statute so that the retroactive authority is "of equal validity in law with an original authority" and thus provides a federal defense. I agree that he has raised more than a colorable defense. The effects of retroactive adoption of the seizure under either *The Caledonian* common law standard or the adoptive seizure provisions, are both issues which should be decided in a federal forum. The criminal action removal statute was designed for this very purpose.

RALPH B. GUY, Jr., Circuit Judge, concurring in part with the dissent.

I concur in that portion of Judge Kennedy's opinion which deals with the jurisdictional issue. I am not in agreement, however, with that portion of the opinion that concludes "the District Court was correct in holding that Wright was acting under the direction of federal officials when he allegedly disobeyed Judge Kessler's order to deposit the $12,000 which had been turned over to the DEA." I do not believe that Wright was acting as a federal officer, nor do I believe that he is entitled to any federal official immunity defense.

---

**2.** The seizure here was a warrantless seizure so we do not have the possible complication of a seizure pursuant to a *state* search warrant. There were no state forfeiture proceedings.

**3.** Removal to federal court of a state action against a law enforcement officer making a federally authorized seizure is provided by 28 U.S.C. § 1442(a)(1). Under section 1442,

    (a) A civil action or criminal prosecution commenced in state court against any of the following persons may be removed by them to the district court of the United States

    . . . .

    (1) Any officer of the United States or any agency thereof, or person acting under him, for any' act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.