RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0054p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHARLES DAWALT; SUE KING, on behalf of themselves
and all others similarly situated,

       *Plaintiffs-Appellees,*

  *v.*

PURDUE PHARMA, L.P.; PURDUE PHARMA, INC.; THE
PURDUE FREDERICK COMPANY; PURDUE
PHARMACEUTICALS L.P.; ABBOTT LABORATORIES;
ABBOTT LABORATORIES, INC., doing business as Abbott
Sales Marketing and Distributing Company; THE P.F.
LABORATORIES, INC.; PRA HOLDINGS, INC.,

       *Defendants-Appellants.*

No. 03-6441

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 01-00253—David L. Bunning, District Judge.

Argued: October 29, 2004

Decided and Filed: February 7, 2005

Before: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

---

### COUNSEL

**ARGUED:** John M. Famularo, STITES & HARBISON, Lexington, Kentucky, for Appellants. David L. Helmers, DAVID L. HELMERS & ASSOCIATES, Lexington, Kentucky, for Appellees. **ON BRIEF:** John M. Famularo, Daniel E. Danford, STITES & HARBISON, Lexington, Kentucky, Susan Mohler Pope, FROST, BROWN & TODD, Lexington, Kentucky, for Appellants. Elizabeth R. Overton, WILLIAM GALLION & ASSOCIATES, Lexington, Kentucky, for Appellees.

---

### OPINION

---

  SUTTON, Circuit Judge. At issue in this appeal is Congress's deceptively simple prohibition on our review of district court remand orders, *see* 28 U.S.C. § 1447(d), and the voluminous body of case law it has spawned. Because we interpret the district court's opinion in this case as a remand for lack of subject matter jurisdiction and not as a discretionary remand of pendent state-law claims, we conclude that

§ 1447(d) bars review of the remand order. That the district court based its remand on a post-removal state-court decision and on post-removal briefing does not, contrary to the defendants' argument, alter this conclusion. Accordingly, we dismiss the appeal of the remand order for lack of appellate jurisdiction.

I.

On November 26, 2001, Charles DaWalt and Sue King (collectively "DaWalt"), both Kentucky citizens and both users of the prescription pain medication OxyContin, sued Purdue Pharma, its subsidiaries and its co-promoters (collectively "Purdue") on behalf of a class of Kentuckians in state court, namely in the Boone County Circuit Court. DaWalt alleged wrongful manufacture, marketing, promotion, sale and distribution of OxyContin, a drug that Purdue developed, patented and, following approval by the Food and Drug Administration in May of 1996, manufactured and promoted.

Broadly speaking, DaWalt's claims fell into two categories, both of which he purported to premise exclusively on state law. DaWalt first sought relief for injuries stemming from Purdue's alleged negligence and fraud. He then asserted a claim for "medical monitoring" under Kentucky law, asking that the court require Purdue to notify people who have received OxyContin of its potential harm; provide for regular medical examinations; create a registry of relevant information; fund further studies of the long-term effects of the drug; and publish and disseminate information to doctors, the medical community in general and class members. Along with premising the complaint on state law, DaWalt sought to ensure that the claims would be heard in state court by stipulating that "the claim for damages of each and every Plaintiff and Class Member is for less than $75,000," the jurisdictional amount-in-controversy requirement for the diversity jurisdiction statute, 28 U.S.C. § 1332. JA 39.

On December 19, 2001, Purdue removed the case to federal district court, claiming that the court had diversity jurisdiction under 28 U.S.C. § 1332 because neither Purdue (nor its subsidiaries nor its co-promoters) were incorporated or had their principal place of business in Kentucky. In the alternative, Purdue invoked the complete-preemption doctrine, claiming that the district court had federal-question jurisdiction under 28 U.S.C. § 1331 because OxyContin was "subject to comprehensive federal regulation." JA 24. In its notice of removal, Purdue further argued that DaWalt's stipulation—which purported to limit damages from "severe disabling" injuries relating to "addiction" and other adverse consequences including "mental, and/or emotional harm, death, and loss of consortium," JA 35, 50, 54—was ineffective under Sixth Circuit law.

A flurry of motions followed, many of which concerned DaWalt's attempt to rephrase his complaint to avoid the implication that each class member would recover over $75,000. DaWalt, for example, moved to delete all references to "death" and future medical care, remove one reference to "severe" medical problems and exclude punitive damages and attorneys' fees. JA 390, 395, 396, 414, 419. Based on these changes, DaWalt filed a motion to remand on January 18, 2002. Purdue responded that, while it was improper for a party to attempt to improve its chances of obtaining a remand through post-removal pleadings, DaWalt's claims still exceeded the jurisdictional amount-in-controversy requirement.

On March 5, 2002, DaWalt filed a reply memorandum urging the district court not to consider the medical monitoring claims in calculating the amount in controversy because those claims may be invalid under a case then pending before the Kentucky Supreme Court and ultimately decided as *Wood v. Wyeth-Ayerst Laboratories*, 82 S.W.3d 849 (Ky. 2002). Purdue responded by stressing that district courts measure the amount in controversy at the time of removal and that the post-removal discovery that a claim is invalid does not deprive a court of jurisdiction even if the remaining claims do not exceed $75,000. Because *Wood* was not settled law in Kentucky, Purdue further argued, it could not be said to a legal certainty that the medical monitoring claims were invalid at the time of removal. On August 22, 2002, the Kentucky Supreme Court decided *Wood*, holding that medical monitoring claims are invalid under Kentucky law absent proof of present physical injury. *See* 82 S.W.3d at 855. The following month, the district court struck a named

defendant, Partners Against Pain, from the complaint because that "defendant" was a website established by Purdue and not a corporate entity or an entity capable of being sued.

A year later, on September 30, 2003, the district court remanded the case for lack of subject matter jurisdiction. The district court first noted that DaWalt's damage stipulation was "of no legally binding consequence and therefore . . . insufficient to warrant remand." D. Ct. Op. at 9. Yet even without the stipulation, the court reasoned, DaWalt's claims did not suffice to meet the jurisdictional amount-in-controversy requirement because *Wood* had "recently [ ] determined that [medical monitoring] is not a legally recognized cause of action under Kentucky law." *Id.* at 10. Because *Wood* precluded medical monitoring claims, the court continued, Purdue had failed to show under *Zahn v. International Paper Co.*, 414 U.S. 291 (1973), that the "minimally injured class member" would meet the jurisdictional amount-in-controversy requirement. D. Ct. Op. at 15. The court used this reasoning *both* to grant Purdue's motion to dismiss the medical monitoring claims and to declare that it had no diversity jurisdiction over the entire case.

The district court next addressed the possibility that Purdue could invoke federal-question jurisdiction under § 1331. After reviewing DaWalt's complaint, the court concluded that the complaint "raise[d] Kentucky state law claims only, that these claims can be decided by looking solely to state law, and that they are not preempted by federal law." *Id.* at 23.

Lastly, the district court refused to certify the case for interlocutory appeal. Purdue's request for certification, the court stated, "arises from the realization that this Court has concluded that the requisite amount in controversy for all putative class members has not been shown, and therefore that this Court lacks subject matter jurisdiction over these proceedings." *Id.* at 24. Citing 28 U.S.C. § 1447(d), the court observed that circuit courts typically lack jurisdiction to review such remand orders.

## II.

Appeals in which both parties agree that the lower court erred but for which no appellate relief may be obtained are not an everyday occurrence in the courts of appeal. Today, however, that is what the pertinent federal statute requires us to do.

A year after the district court issued its remand order and while Purdue's appeal before this court was pending, our circuit addressed the meaning of 28 U.S.C. § 1367 in *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004). We concluded that Congress's 1990 adoption of § 1367 overruled the Supreme Court's opinion in *Zahn* and required district courts to aggregate the claims of class members to calculate the amount in controversy for purposes of diversity jurisdiction, a ruling at odds with the district court's jurisdictional holding. While the Supreme Court has subsequently granted review of this issue, *see Exxon Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 317 (2004), both parties agree that this panel is bound by the *Olden* decision and that, in determining our appellate jurisdiction, we should assume that the district court misconstrued § 1367. The parties also agree that the district court's decision is a final one under 28 U.S.C. § 1291, which grants the courts of appeal jurisdiction to review "final decision[s]" of the district courts.

Yet the acknowledgment of a mistake made in a final decision by a district court, the parties further agree, does not end our inquiry. Just as the mere occurrence of a harm does not open the door to a federal forum, *see, e.g.*, *United States v. Bean*, 537 U.S. 71 (2002), so too the mere fact that a district court erred—no matter how obvious or clear the error—does not permit appellate review, absent a congressional grant of authority, *see, e.g.*, *Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995). *See generally Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers.").

A.

While § 1291 empowers us to review final decisions of the district court, § 1447(d) divests us of some of that authority in the context of remand orders.  Except for remand orders under 28 U.S.C. § 1443 (which relates to civil rights cases and which is not relevant to this appeal), § 1447(d) provides that:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise.

The language of the provision is not only broad but venerable as well.  The present codification dates back to a comparable federal rule that has existed since 1887 and, with a short break, even before then.  *See, e.g.*, *In re Pennsylvania Co.*, 137 U.S. 451, 453–54 (1890); *Gay v. Ruff*, 292 U.S. 25, 28–29 (1934) (Brandeis, J.) (and cases cited).

Things are not as straightforward as they appear, however.  Despite the statute's seemingly unequivocal language barring review of (non-§ 1443) remand orders, the Supreme Court has held that the provision is not that simple.  It must be read in conjunction with § 1447(c), which in relevant part states:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).

According to *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), § 1447(d) "and § 1447(c) must be construed together," so that "only remand orders issued under § 1447(c) and invoking the grounds specified therein—that removal was improvident and without jurisdiction—are immune from review under § 1447(d)."  *Id.* at 345–46 (quoting the "improvident and without jurisdiction" language of a previous version of § 1447(c)).  Section 1447(d), the Court concluded, will bar appellate review save when a district court has "not merely erred in applying the requisite provision for remand but has remanded a case on grounds not specified in the statute and not touching the propriety of the removal."  *Id.* at 352.  In applying this rule, *Thermtron* held that an appeals court had the authority to review a remand order premised on the district court's crowded docket (and nothing else), an explanation that had nothing to do with the propriety of the removal or the court's jurisdiction.  *See id.* at 339.

Two decisions of the Court since *Thermtron* help to illustrate when remand orders may be reviewed and when they may not be.  In *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995), the Court held that § 1447(d) barred appellate review of a district court's remand order on grounds of untimely removal, regardless of whether the action was removed under 28 U.S.C. § 1441(a) (the general removal statute) or 28 U.S.C. § 1452 (the bankruptcy removal statute).  "Congress," the court noted, "has placed broad restrictions on the power of federal appellate courts to review district court orders remanding removed cases to state court."  *Things Remembered*, 516 U.S. at 127.  Section 1447(d) thus applies "not only to remand orders made in suits removed under the general removal statute, but to orders of remand made in cases removed under *any other statutes*, as well."  *Id.* at 128 (quoting *United States v. Rice*, 327 U.S. 742, 752 (1946)) (brackets omitted).

The following Court Term, in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), the Court held that § 1447(d) did not bar appellate review of an abstention-based remand order.  The Court reiterated the *Thermtron* rule and concluded that an "abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure."  *Id.* at 712.

A third decision, *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988), bears tangentially on our resolution of this case as well—although *Cohill* is explicitly not about our appellate jurisdiction under § 1447(d) but rather about a district court's remand power under § 1447(c), *see Things Remembered*, 516 U.S. at 130 (Kennedy and Ginsburg, JJ., concurring) ("We did not find it necessary [in *Cohill*] to decide whether subsection (d) would bar review of a remand . . . for we affirmed the denial of mandamus by the Court of Appeals."). In *Cohill*, the Court considered whether "a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain." 484 U.S. at 345. The Court concluded that a district court did possess such authority even though, at the time of the decision, the versions of the two remand statutes did not permit district courts to remand pendent state-law claims. *See* 28 U.S.C. § 1447(c) (1986) (requiring district courts to remand any case that "was removed improvidently and without jurisdiction"); 28 U.S.C. § 1441(c) (1986) (permitting district courts to remand any "otherwise non-removable" claim that was "separate and independent" of the claim providing the basis for removal of the case). Nevertheless, "the pendent jurisdiction doctrine in [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)]," the Court maintained, "strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court." *Cohill*, 484 U.S. at 351.

As *Things Remembered* suggests, the Court's cases should not be read to permit limitless review of all remand orders. Throughout, the Court has stressed that "when a remand has been ordered" because "the case was removed improvidently and without jurisdiction," § 1447(d) "unmistakably commands that the order 'remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise.'" *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 723 (1977); *see also Things Remembered*, 516 U.S. at 127–28 ("As long as a district court's remand is based on a timely raised defect in removal procedure or lack of subject-matter jurisdiction—the grounds for remand recognized by § 1447(c)—a court of appeals lacks jurisdiction to entertain an appeal of the remand order under § 1447(d)."); *Briscoe v. Bell*, 432 U.S. 404, 414 n.13 (1977) ("Where the order is based on one of the enumerated grounds, review is unavailable no matter how plain the legal error in ordering the remand."); *Thermtron*, 423 U.S. at 343 ("If a trial judge purports to remand a case on the ground that it was removed 'improvidently and without jurisdiction,' his order is not subject to challenge in the court of appeals by appeal, mandamus, or otherwise.").

B.

In applying these precedents, our circuit has grouped the exceptions to § 1447(d)'s ban on appellate review of remand orders into two general categories. One deals with remand orders "based on a substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction." *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 194 (6th Cir. 1990). The other deals with remand orders in which "a district court has jurisdiction at the time of removal, but jurisdiction is subsequently destroyed by later events," *Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 265 (6th Cir. 2003)—a rule commonly referred to as the "post-removal-event" doctrine.

Under the first group of cases, we have appellate jurisdiction to review a district court's remand order made on grounds wholly apart from jurisdictional questions. Paradigm cases are the abstention-based remand that the Supreme Court addressed in *Quackenbush* and the remand predicated on the state of the district court's docket that the Court addressed in *Thermtron*. In keeping with these two decisions, we have held that a district court's remand based on the "interpretation of a forum selection clause is reviewable on appeal." *Regis Assocs.*, 894 F.2d at 195. But this exception to the ban on appellate review does not apply where, as in this case, the district court based its remand on jurisdictional grounds. *See, e.g.*, *Ohio v. Wright*, 992 F.2d 616, 619 (6th Cir. 1993) (en banc) (dismissing for lack of appellate jurisdiction where "the question of removal jurisdiction was the heart of the decision in the district court, and the district court had to examine the plausibility of the federal defense in making its ruling to remand for lack of removal jurisdiction"); *Baldridge v. Kentucky-Ohio Transp., Inc.*, 983 F.2d 1341, 1349 (6th Cir. 1993) ("We find

that the so-called 'collateral issue' was not collateral at all . . . . The preemption inquiry here, unlike an inquiry into the enforceability of a forum-selection clause, necessarily 'related to the question of jurisdiction.'"); *see also Godsey v. Miller*, 2001 U.S. App. LEXIS 9402, at *9, 9 Fed. Appx. 380, 383 (6th Cir. 2001) (unpublished) ("This case differs from *Regis* in that the issue of a forum selection clause is an independent contractual concern created by the actions of the parties, and is not linked to the inherent subject-matter jurisdiction of the court."); *Anusbigian v. Trugreen/Chemlawn, Inc.*, 72 F.3d 1253 (6th Cir. 1996) (holding unreviewable a decision on a non-jurisdictional issue necessarily related to the question of jurisdiction).

Under the second group of cases, applying the post-removal-event doctrine, we have held that where "the district court had jurisdiction at the time of removal, the district court's subsequent remand for lack of jurisdiction in light of changed circumstances . . . is reviewable by this court" on appeal. *Letherer*, 328 F.3d at 265; *see also First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 460 (6th Cir. 2002) ("[Section] 1447(d) means only that a remand order is unreviewable on appeal when the case was remanded based on the district court's conclusion that it lacked subject matter jurisdiction over the removed case *at the time of removal*."); *Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 (6th Cir. 1993) ("[I]f a district court determines subject matter jurisdiction to have existed at the time of removal, yet remands for alleged lack of subject matter jurisdiction based on some post-removal event(s), the remand order is not a Section 1447(c) remand order and is reviewable on petition for a writ of mandamus."). In *Letherer*, the changed circumstance that gave us appellate jurisdiction to review the remand order was the dismissal of a party. *See* 328 F.3d at 265. In *First National Bank of Pulaski*, the changed circumstance was the dismissal of a federal claim. *See* 301 F.3d at 460. And in *Van Meter*, because we were unsure whether or not the post-removal-event doctrine was applicable, we remanded to the district court and requested that the court clarify its remand order. *See* 1 F.3d at 451.

Left to be refined by our cases is the scope of the post-removal-event exception. Though we have never precisely identified the kind of "events" that can give us appellate jurisdiction over a remand order, two clear themes emerge from our § 1447(d) cases.

The first theme—and one consistent with the mandates of Supreme Court cases from *Thermtron* to *Gravitt* to *Things Remembered*—is that, despite its name, the post-removal-event doctrine does not mean that *all* events after removal, such as post-removal briefing or related post-removal events, factor into whether we have appellate jurisdiction over a district court's remand order based on jurisdictional grounds. In *Anusbigian*, for example, we held that § 1447(d) barred review when a "district court's subsequently-acquired understanding of the case reveal[s] that the required amount in controversy had never existed." 72 F.3d at 1255; *see also id.* at 1256 ("If a district court determines, rightly or wrongly, that it lacks subject matter jurisdiction over a removed case, and for that reason remands it to the court from which it was removed, the court of appeals lacks jurisdiction to review the district court's decision."). In doing so, we refused to accept the proposition that the parties' post-removal briefing, which formed the basis for the district court's amount-in-controversy determination, gave us appellate jurisdiction. Our en banc decision in *Wright* accords with *Anusbigian*'s understanding of § 1447(d). In *Wright*, the district court based a remand order on its determination that the defendant in the case was not an "officer of the United States" under 28 U.S.C. § 1442(a)(1) at a hearing held nearly three years after the time of removal. *See* 992 F.2d at 618–19. Nevertheless, we declined to exercise appellate jurisdiction.

Motivating *Anusbigian*, *Wright* and other cases in the same vein (and also motivating us today) is the commonsense observation that many things may happen after a case is removed to federal court and before the district judge renders a decision. Parties may conduct discovery. Parties may submit briefs. A district judge may misplace his trusty copy of *Hart & Wechsler* or Currie's *Federal Courts*, believe that he has arrived at a new and improved theory of federal jurisdiction, only to recover his casebooks and his jurisdictional sanity on the drive home from work. If each and every one of these "events" were to count as a post-removal event for purposes of federal appellate jurisdiction, § 1447(d) would be left a dead letter. Because only a truly prescient district judge can ascertain federal jurisdiction at the *exact* time of removal,

all remand orders in some sense turn on events that occur after removal. By explicitly requiring district courts to remand for lack of subject matter jurisdiction "at any time," moreover, § 1447 on its face prohibits appellate review of subject-matter-jurisdiction remands that the district judge makes "at any time," *see, e.g.*, *Thermtron*, 423 U.S. at 345–46 ("remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review under § 1447(d)").

The second theme that emerges from our cases also helps to ensure that the post-removal-event doctrine does not swallow the § 1447(d) rule. As a close reading of our cases demonstrates, the post-removal-event doctrine is implicated only when a district court makes a discretionary remand of pendent state-law claims following the dismissal of a claim or a party. *See* 28 U.S.C. § 1367(c). A case in point is *First National Bank of Pulaski*. Our appellate jurisdiction in that case depended on the district court's conclusion "that it retained supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), to consider the remaining state-law claims" and the court's decision to decline "to exercise its supplemental jurisdiction and instead remand[] those claims to state court." *First Nat'l Bank of Pulaski*, 301 F.3d at 460. Similarly, in *Letherer*, the dismissal of a party triggered the district court's discretion to remand remaining pendent state-law claims. In that case, a party undergoing bankruptcy reorganization removed a state-law contract claim to a federal bankruptcy proceeding; the bankrupt party subsequently was dismissed from the contract case, and the district court exercised its discretion to remand the contract claim to the state court from which it originated. *See Letherer*, 328 F.3d at 265.

Some of our cases have made this limitation on our appellate authority to review remand orders under the post-removal-event doctrine even more explicit. In *Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754 (6th Cir. 2000), we noted that our appellate jurisdiction turned on the fact that "the district court explicitly stated that it had subject matter jurisdiction when the case was removed and noted that it had not been divested of that jurisdiction by the dismissal of the plaintiff's federal claims." *Id.* at 758; *see also In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local No. 173*, 983 F.2d 725, 727 (6th Cir. 1993) ("In the instant case, upon dismissal of any and all federal claims as time-barred, the district court remanded the 'pendent state claims.' Such remand was discretionary with the court . . . [and therefore] the remand order is reviewable."); *Loftis v. United Parcel Serv.*, 342 F.3d 509, 513–14 (6th Cir. 2003) ("we have jurisdiction over an appeal from a district court's discretionary decisions to remand that are not based on lack of subject matter jurisdiction or defects in the removal procedure"). Even where our holdings have approached the boundaries of the post-removal-event doctrine, we have always required an affirmative action by the district court to indicate that the remand was premised on pendent state-law claims, and not for lack of subject matter jurisdiction. *See, e.g.*, *Davis v. UAW*, 392 F.3d 834, 838 (6th Cir. 2004) (reviewing the district court's remand order when a party had "expressed his intent to abandon [a] claim," thus converting a case over which the court had subject matter jurisdiction into a case that the district court could remand in its discretion under § 1367). Or, on rare occasions, we have remanded an appeal to a district court where a remand order needed further clarification. *See Van Meter*, 1 F.3d at 451.

But we have never held that *any* post-removal event makes a remand order reviewable or strayed from the requirement that a remand order reviewable under the post-removal-event doctrine must be composed of pendent state-law claims. Even though a district court assuredly should assess its subject matter jurisdiction based on the state of the world at the time of removal, *see, e.g.*, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004); *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997–98 (6th Cir. 1976), we do not have jurisdiction when a district court relies on post-removal events to determine that it lacked subject matter jurisdiction at the time of removal (say, for example, because the parties were never diverse). Nor can we agree that an appeals court has jurisdiction whenever a district court *incorrectly* determines its lack of subject matter jurisdiction based on post-removal events but does not have jurisdiction whenever a district court *correctly* determines its lack of subject matter jurisdiction after post-removal events. If this were so, we would effectively affirm (by dismissing for lack of appellate jurisdiction) all correctly decided subject-matter-jurisdiction remand orders and reverse all incorrectly decided subject-

matter-jurisdiction remand orders, a result tantamount to deciding every case on the merits and evading § 1447(d) entirely. *See Adkins v. Illinois Cent. R.R. Co.*, 326 F.3d 828, 834 (7th Cir. 2003).

Our acknowledgment of this limitation on our appellate power not only reins in a potentially boundless exception to § 1447(d) that would render the statute obsolete but also coheres with the Supreme Court's instructions. The source of the post-removal-event doctrine, as our precedents make clear, *see, e.g.*, *Loftis*, 342 F.3d at 513; *Long*, 201 F.3d at 761, is the Supreme Court's implicit holding in *Cohill*. (Recall that the only two Supreme Court opinions that have explicitly sanctioned departure from § 1447(d)'s bar to appellate review, *Thermtron* and *Quackenbush*, both involved remands made on non-jurisdictional grounds and that neither decision implicated the post-removal-event doctrine.) *Cohill* itself involved a district court's discretionary remand of pendent state-law claims. For good reason, we have not read our own appellate jurisdiction more broadly than *Cohill* seemingly permits.

C.

With this framework in mind, we turn to Purdue's assertion that we have appellate jurisdiction to review the district court's remand order in this case because of any one of four distinct events that occurred after the removal of the case from state court and before the district court's remand. We reject each of them.

The first is the parties' subsequent briefing and, in particular, DaWalt's attempts to alter his complaint so that the implied recovery for members of the class fell below the jurisdictional amount-in-controversy requirement. For one, nothing in this case implies that the district court actually relied on DaWalt's amendments to its complaint in deciding to remand the case to state court. For another, broader reason, this type of briefing is likely to occur in every removal case. And in no appeal from a remand order should it be considered a post-removal event sufficient to pass § 1447(d)'s bar to appellate review. Simply put, briefings and repleadings do not, on their own, turn remands for lack of subject matter jurisdiction into remands of pendent state-law claims.

The second is the district court's decision to strike from the suit a party that was not suable in its own right. *Letherer* illustrates how a decision to strike a party can trigger a district court's discretion to remand pendent state-law claims. *See* 328 F.3d at 265. Not so here. The district court's decision to dismiss Partners Against Pain, a website run by Purdue, had no bearing on the court's subject matter jurisdiction. Although the district court may have erred in choosing to strike a party from a claim over which it lacked jurisdiction, that error does not make this case reviewable under the post-removal-event doctrine.

The third is the Kentucky Supreme Court's opinion in *Wood*. Although the Kentucky Supreme Court's opinion may well have occurred post-removal, this very case indicates the fallacy of viewing a state-court case as a post-removal "event," because *Wood* merely affirmed a preexisting decision of the Kentucky Court of Appeals. In doing so, the *Wood* court recognized that "other states have allowed recovery for exposure to harmful substances on a theory known as 'medical monitoring,' which often does not require a showing of physical injury," 82 S.W.3d at 856, but cited a long line of its own precedents requiring proof of present injury to sustain recovery in tort, and declined to permit recovery for claims based on prospective medical monitoring. The Kentucky Supreme Court's decision to follow its own long-established precedent and to affirm the preexisting decision of the state court of appeals cannot be said to constitute a post-removal event.

The fourth (and most difficult to resolve) is the district court's apparent dismissal in its March 5, 2002, order of DaWalt's medical monitoring claim. This decision alone on the part of the district court implicates the doctrine of pendent jurisdiction. In Purdue's view, the district court order should be read to take jurisdiction of the case, dismiss one claim (the medical monitoring claim) and remand the remaining state-law claims under the discretionary doctrine of pendent jurisdiction. In DaWalt's view, we should read the district court order as indicating that the court never had jurisdiction in the first place, along with a simultaneous and erroneous dismissal of the medical monitoring claim.

DaWalt has the better of the argument. The district court's order first discusses the medical monitoring claim. Next, the order dismisses the claim. Subsequently, the order discusses federal-question subject matter jurisdiction. Finally, the order stresses that it effectuates a remand for lack of subject matter jurisdiction and refuses to certify Purdue's request for interlocutory appeal because of § 1447(d). All of this can best be read to indicate that the district court believed it lacked subject matter jurisdiction at the time of removal. The court would have had little reason, for example, to discuss the possibility of federal-question jurisdiction after dismissing the medical monitoring claim if it believed that it had subject matter jurisdiction of the case from the start. And the district court's discussion of § 1447(d), though it cannot insulate the district court's order on its own, *cf. Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 129 (3d Cir. 1998) (noting that the district court's labeling of the order as "appealable" did not make the order appealable), bolsters the conclusion that the district court *thought* it was remanding for lack of subject matter jurisdiction.

That leaves the question of what to do with the medical monitoring claim. Because the district court's dismissal of the medical monitoring claim is inconsistent with the court's claim that it lacked subject matter jurisdiction and because § 1447(d) does not bar our jurisdiction to review a district court's dismissal of a claim, we vacate that part of the district court's decision. *See, e.g.*, *Waco v. United States Fid. & Guar. Co.*, 293 U.S. 140 (1934) (permitting an appeals court to review a district court's decision that accompanies a remand order and that has res judicata effect); *see also Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 420–21 (5th Cir. 2002) ("Under the *City of Waco* rule, we may review any aspect of a judgment containing a remand order that is distinct and separable from the remand proper even if this court lacks jurisdiction to review the remand order.") (quotation marks omitted); 28 U.S.C. § 1447(d) (barring appellate court review of district court remands, not other district court decisions that happen to occur in the same judgment).

III.

For these reasons, we dismiss the appeal of the remand order for lack of appellate jurisdiction and vacate the district court's dismissal of the medical monitoring claim.