**J. LEWIS COOPER COMPANY, Henry A. Fox Sales Company, and Fabiano Brothers, Incorporated doing business as Trans–Con Company, Plaintiffs,**

v.

**DIAGEO NORTH AMERICA, INCORPORATED, National Wine and Spirits, Incorporated and National Wine and Spirits, L.L. C., Defendants.**

No. 05–10084–BC.

United States District Court,
E.D. Michigan,
Northern Division.

May 20, 2005.

Anthony S. Kogut, Curtis R. Hadley, Ray J. Foresman, Willingham & Cote, East Lansing, MI, William M. McClintic, William M. McClintic, P.C., Mt. Pleasant, MI, for Plaintiffs.

Dean M. Altobelli, Miller, Canfield, Louis B. Reinwasser, Lansing, MI, for Defendants.

## ORDER GRANTING MOTIONS TO AMEND COMPLAINT AND RE-MAND TO STATE COURT

LAWSON, District Judge.

Before the Court today are motions that relate to the Court's authority to adjudicate the disputes between the parties. The plaintiffs, all Michigan corporations, filed suit in a Michigan state court alleging various business torts against an Indiana corporation, a Connecticut corporation, and a Michigan limited liability company. The defendants have removed the action to this Court based on diversity jurisdiction, see 28 U.S.C. § 1441(b), despite the non-diversity of the limited liability company, which the defendants claim was fraudulently joined to defeat diversity. Thereafter, the plaintiffs acknowledged that they have no viable claim against the limited liability company, but argue that this defendant was named by mistake when another Michigan corporation should have been sued. The plaintiffs now seek to amend their complaint to substitute the correct defendant and remand the case to state court. The defendants oppose the relief. The Court heard argument from the parties through their respective counsel in open court on May 16, 2005. The Court believes that allowing the amendment at this early stage of the proceedings is appropriate, and the primary purpose of the amendment is not to defeat federal jurisdiction; nonetheless, complete diversity will be destroyed, and the case therefore must be remanded to state court.

### I.

According to the complaint filed in state court, plaintiffs J. Lewis Cooper Co., Henry A. Fox Sales Co., and Fabiano Brothers, Inc., collectively known as Trans–Con Co., are authorized distributor agents and brokers of alcoholic spirits in Michigan and licensed by the Michigan Liquor Control Commission. In late 1996 or early 1997,

Trans–Con became the exclusive distribution agent and broker for defendant Diageo of North America, Inc.'s predecessor in Michigan. Around the same time, Trans–Con also became the exclusive distribution agent and broker for Schieffelin & Somerset Co. (Schieffelin), a foreign partnership partly owned by Diageo that imports alcoholic beverages.

In January 2002, Schieffelin and Diageo separately informed Trans–Con that they were reviewing their respective distribution and brokerage agreements in several mid-western states including Michigan. In March 2002, Diageo hired a former Trans–Con employee, Julian Burzynski, whose employment had been terminated by a written agreement that contained a covenant not to compete or interfere with Trans–Con's business relationships. Nonetheless, Bruzynski assumed the lead role in reviewing Diageo's distribution and brokerage arrangements in Michigan and elsewhere. Because of his position with Diageo, Bruzynski apparently could make recommendations and decisions at odds with Trans–Con's relationship with Diageo. When Trans–Con informed Diageo of its concerns, Diageo assured Trans–Con that Bruzynski would not be involved in any decisions affecting Diageo's relationship with Trans–Con.

The plaintiffs allege that despite these assurances, Bruzynski continued to take a leading role in reviewing arrangements between Diageo and Trans–Con. The plaintiffs sent separate proposals to Diageo and Schieffelin in an attempt to continue in their relationship as exclusive distribution agent and broker. However, on February 19, 2003, Diageo and Schieffelin each informed Trans–Con that they were terminating their authorized distribution agent and brokerage contracts with Trans–Con. Trans–Con was replaced by defendant National Wine and Spirits, Inc.

According to the plaintiffs, National Wine and Spirits, Inc. had been terminated by Diageo in Illinois during the same review procedure. However, National Wine and Spirits, Inc. challenged the termination and ultimately reached a settlement that included an assurance that National Wine and Spirits, Inc. would win the Michigan contract and work with Diageo to force Schieffelin to stop doing business with Trans–Con. The plaintiffs allege that this scheme contemplated redirecting Schieffelin's business to National Wine and Spirits, Inc. or defendant National Wine and Spirits, L.L.C., a business entity located in Michigan.

On February 9, 2005, Trans–Con filed a five-count complaint against Diageo, National Wine and Spirits, Inc, and National Wine and Spirits, L.L.C. in the Isabella County, Michigan circuit court. Count one alleges interference with existing and prospective business relationships in violation of Michigan state law. Count two alleges violation of the Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.771 et. seq. Count three alleges a civil conspiracy in violation of Michigan law. Count four alleges unjust enrichment in violation of Michigan law. Finally, count five alleges the existence of an implied contract under Michigan law.

On March 17, 2005, the defendants filed a notice of removal on the basis of diversity of citizenship. All of the plaintiffs are Michigan corporations based in Michigan. Diageo of North America, Inc. is a Connecticut corporation with its principal office located there; and National Wine and Spirits, Inc. is an Indiana corporation with its principal office in Indiana. However, National Wine and Spirits, L.L.C. is a Michigan limited liability company with its principal office in this state. Although it was clear from the face of the plaintiffs' complaint that complete diversity does not exist, the defendants claim that defendant National Wine and Spirits, L.L.C., a Michigan entity, was fraudulently joined.

The plaintiffs have filed motion papers in which they concede that they have no substantial claim against National Wine and Spirit, L.L.C. since that entity apparently deals only in the distribution of wine; it could not interfere with the plaintiffs' business prospects as alleged in this case because the present claims deal with the distribution of spirits. However, the plaintiffs contend that another, similarly-named Michigan entity is a proper defendant and should be substituted in place of National Wine and Spirit, L.L.C. At the motion hearing, the defendants explained that National Wine and Spirit, L.L.C. is mostly owned by NWS Michigan, Inc., a Michigan corporation that is a wholly-owned subsidiary of defendant National Wine and Spirits, Inc., the Indiana corporation. The plaintiffs seek permission to substitute NWS Michigan, Inc. as a defendant in place of National Wine and Spirit, L.L.C. But the defendants contend that the substitution should not be allowed because it would destroy complete diversity and require that the case be remanded to state court.

The parties also have informed the Court that another state court action is pending that relates to the present dispute. That action, commenced after the plaintiffs initiated the present action in Isabella County, was filed by NWS Michigan, Inc. in the Ingham County, Michigan circuit court seeking a declaration that the Michigan Liquor Control Commission has exclusive jurisdiction over this dispute. The defendants contend that remanding this case to state court will result in parallel state court actions and subject them to potentially inconsistent judgments. They believe that their interest would be best served if this Court refused the substitution, retained jurisdiction, stayed this mat-

ter under one of the federal abstention doctrines, and waited until the Ingham County case is decided. The plaintiffs do not favor that outcome since they wish to proceed with the action they began in their chosen forum.

## II.

Title 28, section 1441(a) of the United States Code permits defendants in civil actions to remove cases originally filed in state courts to federal district courts where the district court would have had original jurisdiction. Cases may be removed under federal question jurisdiction or on the basis of diversity of citizenship. *See* 28 U.S.C. § 1441(b). The plaintiffs have not alleged a federal cause of action in their complaint (their antitrust claim is based on state law), so the defendants here seek removal based on diversity of citizenship.

█ It is axiomatic that federal diversity jurisdiction exists only when "no plaintiff and no defendant are citizens of the same state." *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) (citing *United States Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir.1992)). Therefore, complete diversity of citizenship must exist "both at the time that the case is commenced and at the time that the notice of removal is filed." *Ibid.* (citing *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir.1993)). For the purpose of ascertaining jurisdiction, a corporate entity "shall be deemed to be a citizen of any State by which it has incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c) (defining corporate citizenship for "this section and section 1441 of this title").

█ An exception to the complete diversity rule is found in the doctrine of fraudulent joinder. "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome–Duncan,* 176 F.3d at 907 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992)). Establishing that joinder of a party is "fraudulent" requires no proof of the plaintiff's actual motive. *See* 16 Moore's Fed. Prac. § 107.14[2][c] (noting that "[t]he term 'fraudulent joinder' is a bit misleading because it requires neither a showing of fraud nor joinder in one sense"). Rather, the thrust of the inquiry is "whether [the plaintiff] had at least a colorable cause of action against [the non diverse defendant] in the Michigan state courts." *Jerome–Duncan,* 176 F.3d at 907 (quoting *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994)).

█ That inquiry is simplified in this case by the plaintiffs' concession that they have no viable claim against the Michigan defendant, National Wine and Spirits, L.L.C. The plaintiffs argue that they had no improper intention to join this defendant for the purpose of defeating federal jurisdiction, but that does not matter; the plaintiffs' motive in joining a defendant is irrelevant. *Ibid.* Because the plaintiffs have no "colorable cause of action" against the Michigan defendant, the fraudulent joinder rule excuses the lack of complete diversity, and the matter was properly removed to this Court.

█ In seeking to substitute another Michigan defendant, the plaintiffs cite Federal Rule of Civil Procedure 15(a), which states that "leave [to amend a complaint] shall be freely given where justice so requires." Indeed, although "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or

would be futile," *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), amendments at this early stage of proceedings under Rule 15 are favored. *See Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986) (per curiam) (stating that cases "should be tried on their merits rather than the technicalities of the pleadings").

However, the defendants insist that the plaintiffs' request to amend their complaint should be governed instead by 28 U.S.C. 1447(e), which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." The Court agrees with the defendants. Because removal was proper, and the motion to amend the complaint seeks to add a party that would destroy complete diversity, the factors articulated by the decisional law construing section 1447(e) should determine the propriety of allowing the amendment rather than the liberal amendment provisions of Rule 15(a).

■ The Court has found no Sixth Circuit case that addresses section 1447(e), perhaps because an order remanding a removed case for want of jurisdiction is not reviewable on appeal. *See* 28 U.S.C. 1447(d) (stating that "[a]n order remanding a case to the State court from which it was removed," except in certain civil rights cases, "is not reviewable on appeal or otherwise"); *but see DaWalt v. Purdue Pharma, L.P.,* 397 F.3d 392, 399 (6th Cir.2005) (describing the "post-removal-event doctrine"). However, district courts in this circuit have provided guidance on the question. The statute appears to entrust the decision to allow joinder of a jurisdiction-destroying party to the court's discretion; the court must consider the diverse defendant's interest in selecting a federal forum, *see Wells v. Certainteed Corp.,* 950 F.Supp. 200, 201 (E.D.Mich.1997) (Duggan, J.) (citing *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987)), together with four other factors: "(1) the extent to which the purpose of the amendment is to defeat jurisdiction; (2) whether the plaintiff was dilatory in seeking the amendment; (3) whether the plaintiff will be injured significantly if the amendment is not allowed; and (4) any other factors bearing on the equities." *Siedlik v. Stanley Works, Inc.,* 205 F.Supp.2d 762, 765 (E.D.Mich.2002) (Gadola, J.). These factors, the Court believes, are intended to answer the ultimate question whether the primary purpose of the proposed joinder is to oust the case from the federal forum.

■ The Court recognizes that the out-of-state defendants have a right to a federal forum that finds its roots in the Constitution, *see* Const. Art. III § 2, as periodically expanded and contracted by Congress. However, the plaintiffs also have a right to fashion their lawsuit, select their causes of action, and advance theories against the parties of their choosing. The Court is satisfied that the plaintiffs intended to join the parties whom they believed conspired to interfere with their business relationships, and they have alleged that NWS Michigan, Inc. benefitted from their loss of the distributing agreement with Schieffelin, a "fact" from which it is reasonable to infer a motive to join in the conspiracy. Given the close relationships and similar names among the Indiana corporation, the Michigan limited liability company, and the Michigan corporation, it is apparent that the plaintiffs' mistaken joinder of the wine distributor instead of the spirits distributor was reasonable. Although substituting the "correct" party will defeat jurisdiction, the Court finds that such a

purpose is an incidental effect of the joinder, not its primary purpose.

The second factor favors the plaintiffs. They promptly sought leave to amend upon learning of their mistake. The complaint was filed in the state court on February 9, 2005, and the action was removed on March 17, 2005. A week later, the plaintiffs realized they had made a mistake and sought to amend their complaint to add the correct party. The defendants argue that the plaintiffs are well versed in the defendants' corporate interrelationship and their so-called error in naming National Wine and Spirits, L.L.C. is evidence of impropriety, dilatory conduct, and an ultimate attempt to win a favorable forum. However, the defendants do not point to evidence suggesting the error is anything more than a simple mistake. The parties do not dispute that National Wine and Spirits, Inc. wholly owns NWS Michigan, Inc., which owns ninety-nine percent of National Wine and Spirits, L.L.C. Likewise, the parties agree that NWS Michigan, Inc. and National Wine and Spirits, L.L.C. are both housed in the same building and share the same address. It is also clear from the face of the plaintiffs' complaint that the plaintiffs intended to sue the Michigan entity that was the beneficiary of the new Schieffelin distribution and brokerage agreement.

With respect to the third factor, the Court notes that the plaintiffs could suffer prejudice if they are not permitted to proceed against all the members of the conspiracy in one forum. The defendants argue that such a forum exists in the Ingham County circuit court. Perhaps the plaintiffs could file a counterclaim against NWS Michigan, Inc. in Ingham County, but to proceed against all the conspirators in the same case, they also would have to join the present defendants in that forum as well. The net result would be these same parties litigating the dispute in a Michigan state court chosen by the defendants' interests—the Ingham County circuit court—after the plaintiffs initially commenced their action in the Isabella County circuit court.

Finally, the defendants argue that one of the "other factors" this Court ought to consider is the notion of comity. They contend that allowing the joinder, which in turn will necessitate a remand, will result in parallel state court actions. The defendants' preferred result is that this Court retain jurisdiction of this case, stay it in accordance with the *Colorado River* abstention doctrine, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and allow the Ingham County circuit court decide whether the primary jurisdiction of the dispute rests with the Michigan Liquor Control Commission. The last aspect of this argument is, perhaps, where the defendants' notion of comity fits.

However, the Court finds the defendants' argument disingenuous. Although the *Colorado River* doctrine does provide that in limited circumstances a federal court ought to abstain from entertaining an action when a parallel action is pending in a state court, *see Romine v. CompuServe Corp.*, 160 F.3d 337, 339 (1998) (stating that "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts"), it has no application here. The defendants in essence are asking this Court, out of notions of comity and respect for the state courts, not to allow the plaintiffs to return to state court to pursue an action that the defendants do not suggest was brought there improperly in the first instance. In relying on federal abstention doctrines, the defendants seek the protection of a federal

forum not for the adjudication of the plaintiffs' claims but to prevent their adjudication. The Court agrees that if the action were to remain in federal court, abstention under the *Colorado River* doctrine may be appropriate. If the matter should be decided by the Michigan Liquor Control Commission, *Burford* abstention may be appropriate. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (holding that although federal jurisdiction is proper, a federal court should abstain from exercising jurisdiction as a matter of comity in order to avoid undue interference with the state's regulation of a local industry). But when the result of a proper joinder of a party is that the action must to return to the state judicial forum, interests of comity are served, not impaired.

It is true that remanding this matter to state court will result in two proceedings before different state courts. Of course, the defendants could avoid that result by abandoning their discretionary action for declaratory judgment and raising their primary jurisdiction argument as a defense in the Isabella County action. Moreover, the matter of duplicative proceeding should be addressed in the first instance by the state courts, which have procedural rules in place to cover such matters. *See* Mich. Ct. R. 2.116(C)(6) (stating that a motion to dismiss may be based on the ground that "[a]nother action has been initiated between the same parties involving the same claim"). However, the possibility, even the likelihood, of two separate state court actions is no reason to deny the plaintiffs' request to substitute a party in this case.

### III.

The Court finds that the factors guiding its discretion under 28 U.S.C. § 1447(e) favor granting the plaintiffs' motion to substitute a Michigan defendant in the action. Adding that defendant will defeat the

Court's jurisdiction, and the matter must be remanded to state court.

Accordingly, it is **ORDERED** that the plaintiffs' motion to amend its complaint to substitute a party [dkt. # 9] is **GRANTED**. The proposed amended complaint (Exhibit 1 to the plaintiffs' motion) shall be deemed filed as of the date of this order.

It is further **ORDERED** that the plaintiffs' motion to remand to state court [dkt. # 8] is **GRANTED**.

It is further **ORDERED** that this matter is **REMANDED** to the Isabella County, Michigan circuit court.